UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SOUTHERN PILOT INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:17-cv-01207-JMS-DML |
| MATTHEWS AUTO REPAIR, INC., | ) |
| Defendant. | ) |
| MATTHEWS AUTO REPAIR, INC., | ) |
| Counter Claimant, | ) |
| v. | ) |
| SOUTHERN PILOT INSURANCE COMPANY, | ) |
| Counter Defendant. | ) |

# **ORDER**

Southern Pilot Insurance Company ("Southern") issued an insurance policy to Matthews Auto Repair, Inc. ("Matthews Auto") for the period of May 8, 2002 to May 8, 2003. [Filing No. 8 at 2.] In 2016, an environmental investigation revealed toxic waste on Matthews Auto's property. [Filing No. 8 at 2.] On June 22, 2016, Matthews Auto voluntarily entered into a remediation agreement with the Indiana Department of Environment Management ("IDEM"). [Filing No. 8 at 5.] On July 11, 2016, Matthews Auto notified Southern of an "Environmental Suit" initiated by IDEM, which Matthews Auto claimed was covered under the insurance policy. [Filing No. 8 at 5.] Southern filed its First Amended Complaint for Declaratory Judgement ("Complaint"), [Filing No. 8], asserting that Matthews Auto breached the insurance policy by entering into the remediation agreement with IDEM without first obtaining Southern's consent.

[Filing No. 8 at 6.] Southern filed a Motion for Judgement on the Pleadings, [Filing No. 33.], which is now ripe for the Court's consideration.

# I.
## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Proc. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standard that applies to a motion to dismiss under Rule 12(b)(6). *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir. 1991). A "court may consider only matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F. 2d 357, 358 (7th Cir. 1987) (citing *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F. 2d 174, 177 n. 2 (7th Cir. 1986)). The Court should "take all well-pleaded allegations in the plaintiffs' pleadings to be true, and [should] view the facts and inferences to be drawn from those allegations in the light most favorable to the plaintiffs." *Republic Steel Corp.*, 785 F. 2d at 177 n. 2. However, "a court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The documents a court may consider under Rule 12(c) include "the complaint, the answer, and any written exhibits attached as exhibits [to either]." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F. 3d 449, 452 (7th Cir. 1998) (citing Fed R. Civ. P. 10(c)). "A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that [the

moving party] is entitled to judgment as a matter of law." *Karaganis,* 811 F. 2d at 358 (citing *Flora v. Home Fed. Savings & Loan Ass'n*, 685 F. 2d 209, 211 (7th Cir. 1982)).

## II.
### BACKGROUND

### A. The Policy

Matthews Auto owns the property located at 1760 East 110th Street, Indianapolis, Indiana (the "Property"). [Filing No. 8 at 1.] Southern issued Matthews Auto a Commercial Property/Garage Coverage – Auto Liability and Business Operations Policy (the "Policy") for the period of May 8, 2002 to May 8, 2003. [Filing No. 8 at 2.] The Policy states that Southern will pay "all sums an 'insured' must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' . . . [Southern] will have the right to defend any 'insured' against a 'suit' asking for those damages[.]" [Filing No. 34-1 at 54.] The Policy defines "suit", in relevant part, as "property damage" or "[a] 'covered pollution cost or expense', to which this insurance applies[.]" [Filing No. 34-1 at 68.] The Policy further defines suit to include: (1) an arbitration that seeks covered pollution costs or expenses that an insured must submit or does submit to with the consent of Southern; or (2) "[a]ny other alternative dispute resolution proceeding in which such damages or 'covered pollution costs or expenses' are claimed and to which the insured submits with our consent." [Filing No. 34-1 at 68.]

Under the section titled "Duties in the Event of Accident, Claim, Suit or Loss" the Policy states that Southern owes no duty to provide coverage unless Matthews Auto fully complies with the following: "In the event of 'accident', claim, 'suit' or 'loss', you must give [Southern] or [Southern's] authorized representative prompt notice of the accident or 'loss[.]'" [Filing No. 8 at 3.]

3

Finally, the Policy states that Southern owes no duty to provide coverage unless there has been "full compliance with the following duties: … you and any other involved 'insured' must: (1) Assume no obligation, make no payment or incur no expense without [Southern's] consent, except at the 'insured's' own cost." [Filing No. 34-1 at 64 (the "Voluntary Payment Provision").] The Policy also states that Matthews Auto must "(2) Immediately send [Southern] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or 'suit'." [Filing No. 34-1 at 64.]

### B. Voluntary Remediation Agreement

In January 2016, Matthews Auto entered into a real estate contract to sell the Property. [Filing No. 8 at 4.] The contract allowed the buyer to conduct environmental testing, which revealed certain environmental issues, including an underground storage tank and an oil/water separator. [Filing No. 8 at 4.] Both the underground storage tank and the oil/water separator were used in connection with a petroleum service station located on the Property in the 1970s before Matthews Auto acquired the Property in the 1980s. [Filing No. 8 at 4.] In March 2016, a limited groundwater assessment revealed 26 volatile and semi-volatile organic compounds in the groundwater. [Filing No. 8 at 4.]

On May 26, 2016, Matthews Auto voluntarily submitted an application to IDEM's Voluntary Remediation Program. [Filing No. 34-4.] In support of its application, Matthews Auto submitted information about the environmental hazards on the Property. [Filing No. 34-4.] On July 19, 2016, Matthews Auto, with counsel, signed a Voluntary Remediation Agreement ("Agreement"). [Filing No. 8-11.] Pursuant to the Agreement, Matthews Auto agreed to "reimburse IDEM for all of its Administrative Costs" associated with the cleanup, including, but not limited to: (1) compliance monitoring; (2) review and approval of reports; (3) environmental

restrictive covenants; (4) copying of documents; (5) travel; (6) laboratory or sampling costs; and (7) retention of qualified personnel to oversee the work performed under the Agreement to be paid at a rate of $75.00 per hour for salary, benefits, and indirect costs. [Filing No. 8-11 at 5.] The Agreement also had an attachment titled "Special Conditions" that set forth further obligations of the parties and listed Matthews Auto's Project Manager as Polaris Environmental, LLC. [Filing No. 8-12 at 3.]

### C. Demand Letter

On July 11, 2016, Matthews Auto, through a letter submitted by Matthews Auto's retained counsel, notified Southern and several other carriers of an "Environmental Suit" initiated by IDEM. [Filing No. 8-13.] The letter stated, "Your policyholder hereby tenders to you for defense and indemnity the liability suit administrative action brought by [IDEM] evidenced by the enclosed suit letter." [Filing No. 8-13 at 2.] It also claims that IDEM "*(a)* alleges that your policyholder caused or contributed to property damage and/or personal injury as defined in, and within the coverage of your policies of insurance and *(b)* seeks damages for which your insurance policies respond." [Filing No. 8-13 at 2.] There was no "suit letter" attached with the July 11, 2016 letter. [Filing No. 8 at 5.] IDEM has not initiated any administrative action, civil proceeding, or lawsuit against Matthews Auto. [Filing No. 8 at 5.]

On July 27, 2016, Southern acknowledged Matthews Auto's demand for defense and indemnity and reserved all of its rights under any policies of insurance issued by Southern and its predecessor, Jefferson Fire & Pilot Insurance Company, to Matthews Auto. [Filing No. 8 at 5.]

# III.
## DISCUSSION

The Court notes at the outset that "[w]hen a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). The forum in this case is Indiana, which recognizes that a contract for insurance "is subject to the same rules of interpretation as are other contracts." *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537-38 (Ind. 1997). "If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning, but if the language is ambiguous, the insurance contract should be strictly construed against the insurance company." *Morris v. Econ. Fire and Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006).

Southern argues that, pursuant to the Agreement, Matthews Auto assumed both liability and the obligation to remediate the Property to IDEM's standards, which is a violation of the Voluntary Payment Agreement and results in a loss of coverage. [Filing No. 50 at 5.] It argues that by entering the Agreement with IDEM, "Matthews Auto relinquished all of its defenses to liability, and eliminated any opportunity for Southern [] to investigate the claim, identify other potentially responsible parties, and participate in settlement discussions with IDEM to possibly reduce Matthews' exposure." [Filing No. 50 at 5-6.]

In support, Southern cites two cases interpreting similar provisions. The first is *West Bend Mutual Insurance Company v. Arbor Homes, LLC*, wherein the Seventh Circuit, interpreting Indiana law, found that "[a]ny insured that settles a claim without [its insurer]'s knowledge or consent does so at the insured's own expense under the express language of [the policy]." 703 F.3d 1092, 1096 (7th Cir. 2013) (citing *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1271 (Ind. 2009)). In *West Bend*, a plumber, Willmez Plumbing Inc. ("Willmez"), failed to

6

connect a home's drainage system to the city's sewer, resulting in significant damage to a newly constructed home that led to the illness of its new occupants, the Lorches. *Id*. at 1093-94. Willmez served as the plumbing subcontractor for the contractor that built the house, Arbor Homes, LLC ("Arbor"). *Id*. at 1093 On April 18, 2007, the Lorches sent a letter to Arbor demanding that Arbor purchase the sewage filled home and build them a new one. *Id*. at 1094. Following discussions about possible resolutions, Arbor informed Willmez to place its insurer, West Bend Mutual Insurance Company ("West Bend"), on notice of the Lorches' claims. *Id*. On May 4, 2007, Arbor memorialized the parties' understanding of a settlement with the Lorches and "requested that Willmez or West Bend contact Arbor immediately if Willmez or the insurer needed any additional information regarding the settlement. Willmez later told Arbor that it forwarded this letter to West Bend." *Id*. Arbor did not hear from West Bend and assumed the insurer had no objections to the settlement agreement, which Arbor signed with the Lorches on June 6, 2007. *Id*. Arbor agreed to the Lorches' terms to purchase the sewer-ridden home, build them a new home, and compensate the Lorches accordingly. *Id*.

Thereafter, Arbor filed suit against Willmez and sent a copy of the complaint to West Bend on October 12, 2007. *Id*. Arbor claimed that it was an additional insured on Willmez's insurance policy with West Bend. *Id*. West Bend denied liability and filed suit seeking a declaration that it had no obligation to defend and indemnify Arbor against the Lorches' claims. *Id*. West Bend claimed that it was not aware of the problem at the Lorches' home until May 4, 2007, and did not learn of Willmez's agreement to cover a large portion of the damages in the settlement until October 2007, when it received notice of Arbor's lawsuit. *Id*. at 1094-95. West Bend was not aware of the terms of the settlement agreement until April 2008. *Id*. at 1095.

7

The Seventh Circuit upheld the lower court's decision to deny coverage based on a nearly identical provision to the Voluntary Payment Provision here, which stated that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." *Id*. The Seventh Circuit found that this "reasonable and prudent provision" affords the insurance company "the opportunity to protect itself and its insured by investigating any incident that may lead to a claim under the policy, and by participating in any resulting litigation or settlement discussions." *Id*. at 1095-96. "Having no opportunity to participate in the investigation or settlement, West Bend is entitled to enforcement of the plain language of the contract: Arbor's settlement with Willmez and with the Lorches without the consent of West Bend is at Arbor's own expense."

Southern also cites to *Travelers Casualty and Surety Company v. Maplehurst Farms, Inc.*, 18 N.E.3d 311 (Ind. Ct. App. 2014). In *Maplehurst*, the insured, Maplehurst Farms, Inc. ("Maplehurst"), sold its property to Dean Foods Company ("Dean"). *Id*. at 312. Following the sale, Dean discovered contamination on the property, which it reported to IDEM. *Id*. IDEM informed the parties that if they could not agree to remediate the contamination, it might issue an enforcement order requiring the parties to take the necessary remediation of the property. *Id*. Thereafter, Maplehurst entered into a settlement agreement with Dean, agreeing "to pay Dean $170,000.00 and to assume full and complete responsibility as the responsible parties to remediate the environmental contamination reflected in the incident to IDEM's satisfaction." *Id*. at 312-13 (internal quotation marks and citation omitted). Five months later, Maplehurst notified its insurer, Travelers Casualty and Surety Company of America, and Travelers Property Casualty Company of America (collectively, "Travelers"), of the claim. *Id*. at 313. Travelers denied coverage based on a provision that provided, in part: "No insureds will, except at their own cost, voluntarily make

8

a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." *Id.* (internal quotation marks and citation omitted). The court in *Maplehurst* found that the provision precluded coverage and stated that "[a]ny insured that settles a claim without the insurer's knowledge or consent does so at the insured's own expense under the express language of this provision." *Id.* at 317. The court noted that "[a]lthough some of the remediation occurred after notice to Travelers, all of the post-notice costs at issue flowed from the Dean Settlement." *Id.* The court, citing its previous holding involving the same parties, stated that the definition "incurred" meant "that 'where an insured enters into a settlement agreement without the insurer's consent in violation of a voluntary payment provision, that obligation cannot be recovered from the insurer.'" *Id.* (citing *Travelers Ins. Co. v. Maplehurst Farms, Inc.*, 953 N.E.2d 1153, 1161 (Ind. Ct. App. 2011)).

In its response, Matthews Auto does not dispute that it entered into the Agreement prior to notifying Southern of its claim. Rather, Matthews Auto cites to various Indiana statutes that relate to a landowner's obligations for remediating environmental hazards and argues that the Agreement is simply a means to the same end: the environmental hazards on the Property would need to be cleaned up with or without the Agreement. [Filing No. 46 at 2-6.] Matthews Auto claims that, under Indiana law, "the cleanup obligations are the same[,]" regardless of whether a landowner voluntarily cleans the Property with IDEM's supervision or is forced into a cleanup program via a lawsuit. [Filing No. 46 at 3-4.] Matthews Auto also states that it has not yet made payment or incurred any expense and therefore it can simply walk away from the Agreement, which will nonetheless result in IDEM pursuing it for the cleanup. [Filing No. 46 at 7.]

Although the Voluntary Payment Provision is similar to the provisions found in *West Bend* and *Maplehurst*, the obligations in the Agreement at issue are distinct. The settlements in both of

9

those cases mark the end of the legal dispute amongst the parties and clearly delineate the parties' monetary and performance obligations. The Agreement, however, does not establish that Matthews Auto was in fact liable for the contamination on the Property, nor does it set forth an amount of money that Matthews Auto will pay to IDEM to settle a legal dispute. Rather, the Agreement is merely a plan between Matthews Auto and IDEM to set the schedule and scope of the work to remediate the hazards on the Property. [Filing No. 34-7 at 3.] Moreover, the Agreement specifically states that it remains in effect "until the earlier of: … (3) withdrawal from the Agreement and/or the [Voluntary Remediation Program] by the Applicant." [Filing No. 34-7 at 3.]

In its reply, Southern states that Matthews Auto has agreed to pay administrative costs associated with the Agreement. However, because no work has been performed, these costs have not yet been "incurred" and are only meant to reimburse IDEM for costs "associated with implementation of this Agreement." [Filing No. 34-7 at 5.] Southern also cites the provision defining the Agreement as "an administrative settlement for purposes of 42 U.S.C. 9613(f)(2), under which [Matthews Auto], upon payment of all Administrative Costs due under the Agreement and issuance of a Covenant Not to Sue, will have resolved liability it may have under CERCLA[.]" [Filing No. 34-7 at 9.] This clause, however, clearly states that such liability will be resolved only upon payment of administrative costs and issuance of a covenant not to sue letter, neither of which has transpired.

The Agreement is simply a plan between IDEM and Matthews Auto to ensure proper removal of the contamination on from the Property, in accordance with IDEM's standards. Although Matthews Auto may perform under the Agreement, it may also withdraw from the Agreement without penalty. Because Matthews Auto has not incurred any binding legal or monetary obligations under the

Agreement, the pleadings do not establish as a matter of law that it is in violation of the Voluntary Payment Provision.

## IV.

### CONCLUSION

For the foregoing reasons, Southern's Motion for Judgment on the Pleadings, [Filing No. 33], is **DENIED**.

Date: 11/29/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**